Your Honors, good morning. Good morning. May it please the Court, my name is Andy Crotter, and along with my colleagues Eduardo Castro and Benjamin Casper, I represent the petitioner in these consolidated appeals, Amreya Shefa. Your Honors, in our briefing we've laid out a series of legal errors committed by the immigration judge and the Board of Immigration Appeals below, errors which we contend should be corrected on remand. Now, I understand our time together is short, so I'd like to focus on two of those issues today. First, the finding that Shefa had committed a particularly serious crime and thus was not entitled to withholding of removal under the Immigration and Nationality Act. And second, the Board of Immigration Appeals' assessment of Shefa's application for deferral of removal under the Convention Against Torture. Now turning to the particularly serious crime analysis, Your Honors, I'd like to start before I jump into the legal issues with a little procedural background just to make sure we're all on the same page as far as what happened here in the proceedings below. So to begin, the Attorney General may withhold withholding of removal, or sorry, may not withhold removal if the Attorney General decides the alien having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States. And there's two ways to determine that someone has committed a particularly serious crime. There's a categorical per se bar established by the statute itself, which is any crime for which the immigrant received a term of imprisonment of five years or more. And any other crime can still be particularly serious if the BIA and the immigration judge looks at all the facts and circumstances and determines it's particularly serious despite not receiving a term of imprisonment of five years. Now here, at the very first immigration hearing Shefa received, the immigration judge determined that hers was a per se particularly serious crime. Now although that decision is not before this court today because the BIA did not affirm that point, it's important just to understand because from then on, Shefa's immigration proceedings were focused on her Convention Against Torture Relief, her application under CAT. The hearing in May 2018 that she held was restricted to CAT. And then again in June 2018, Convention Against Torture was the only relief discussed. Only evidence relevant to that relief was offered. An argument on that point was the only one that was allowed. Now this is important because it leads us to our very first issue, which is the fact that Shefa didn't receive a hearing on her particularly serious crime outside of that per se bar. And that is a due process violation and a statutory violation that should be corrected. Now Your Honor, the Eighth Circuit in Thune v. Gonzalez, which we've cited in our briefing, made explicitly clear that immigrants in removal proceedings have a statutory and due process right to a fair and full hearing. And they set out what a fair and full hearing is. It's an opportunity to present evidence, argument, and make a record. All three of those things. And in this case, Shefa never received that opportunity. She never had the opportunity to make any argument, to show the court what specific facts it should focus on in determining whether she had committed a particularly serious crime. She never had the opportunity to make a complete record. Now those two points are very important because those are being held against Shefa here on this appeal, Your Honors. The government has first asserted there was no need to make a dangerousness finding under the particularly serious crime analysis, first because Shefa didn't raise it in front of the immigration judge. And the government says this issue has thus been waived. But there was no opportunity to raise that issue. There was no hearing in which Shefa could raise the issue. There was no briefing in which Shefa could raise the issue. The only position Shefa took was asking the immigration judge to reconsider her per se determination and apply the factors that the BIA set out in matter of NAM. And in that case, the BIA said, look, when it's not a per se crime, we look at everything to determine otherwise if it is. We look at the conviction. We look at the facts and circumstances underlying that conviction. And the BIA in this case confirmed that point. They said, quote, we must look at all of those issues when determining whether someone has committed a particularly serious crime. That didn't happen here. If you look at the immigration judge's order and if you look at the BIA's order in this documents, the only thing you would know is that Shefa was convicted of first degree manslaughter and that she killed her husband. That's it. There's no mention in either opinion of the long history that she had with her husband, the year and a half of abuse that she suffered, the fact that she responded while being raped again in December of 2013, the fact that she was slashed with a knife before she ever responded. These are all facts that are confirmed by the criminal court below and they're not mentioned in the opinion of either the immigration judge or the BIA. Your Honors, the criminal court's factual findings span 12 pages. The entire agency analysis of this issue spanned 15 words. The BIA said we recognize the significant harm suffered by the respondent during her relationship with the victim. That's not sufficient. And this court has held that the wholesale failure to review evidence is a due process violation that entitles you to review. So this is the second issue we've raised under the particularly serious crime argument. So the first is no hearing, that's a statutory violation, Shefa was entitled to a hearing, she didn't get one. The second issue is, despite there being no hearing, the immigration judge and the Board of Immigration Appeals have to do their work. They have to review the evidence and come to a reasoned, articulate decision. This court has said time and time again, quote, the BIA must consider the issues raised and announce its decision in terms sufficient to enable the reviewing court to perceive that it has heard and thought and not merely reacted. Now I'll give you a recent quotation, that's Ali V. Barr, 924 F. 3rd, 983, that was from 2019. But again, this court has made that point known many times, the BIA has to perceive and think, it can't just react. And that's not what happened here. The failure to discuss any of those important critical facts, the wholesale failure to review that evidence, that's a violation that needs to be corrected. Counsel, I'd like to have you, if you could, address your argument about the need for a separate danger to the community analysis. Thank you, Your Honor. And why that should be a separate analysis, and how you would get around Tien versus Holder in that regard. Now there, Your Honor, we think that the amicus brief filed on this point says it best, when it need not necessarily be a separate determination, but it needs to be a part of the particularly serious crime determination. So in matter of NAM, the BIA said, look, we don't do a separate dangerousness analysis anymore. But that doesn't mean dangerousness isn't a very important, indeed critical part of the particularly serious crime assessment. In fact, in matter of NAM, the BIA made clear, quote, the goal of protecting the public is at the heart of the particularly serious crime bar. That dangerousness assessment, and whether the individual is a danger to the community, that's central to the determination. And that's statutory. The language itself provides that withholding of removal can be refused if the alien, having been convicted by a final judgment, is a danger to the community. And again, in matter of GGS, which we've cited in our briefing, that's from 2014. That's seven years after matter of NAM, and three or five years after Tien v. Holder. The BIA again said that the relevant statute provides, quote, the essential key to determining whether a crime is particularly serious. And that essential key is whether the nature of the crime is one which indicates that the alien poses a danger to the community. I think the government will argue, counsel, that once it's been determined that there is a serious crime of violence, that it's automatic, that they're a danger to the community. Your Honor, that's not what Congress said when they set out the relevant statute. The government hasn't made that argument in their brief, that this is some kind of categorical particularly serious crime. But even if they made that argument, it's wrong. Congress has said the only per se particularly serious crime is that which carries a term of imprisonment of five years or more. There is no definition of a particularly serious crime in the statute, but the BIA has filled that in. And they've said any time we don't have a particularly serious crime under a per se analysis, we look at everything. If Congress wanted to say any time you committed a crime against a person that resulted in their death, that's a particularly serious crime, they could have said that. They didn't. If the BIA wanted to set that as its precedent, they could have done that. They didn't. Their precedent clearly calls for the review of all the facts and circumstances relevant to a case to the extent it's not a per se particularly serious crime. And that's what we have here. And thus, the wholesale failure to review evidence is a critical legal error that needs to be corrected. But even beyond that, even if you feel that the 15 words that the BIA included is sufficient assessment and that they did consider these points, your honors, this cannot be determined to be an articulate, reasoned decision that provides this court sufficient fodder for review. In fact, when reviewing a similar case in the Seventh Circuit, Judge Easterbrook said, Although the record contains evidence that drug dealing organizations in Mexico target former police officers, the board did not mention it. That won't do. The board must analyze rather than ignore material evidence. And that's RRD v. Holder, 746 F. 3rd, 807 at 810. That's important. That's critical, your honors. The board can't just ignore the facts and circumstances of a case and say this is particularly serious because someone died. Again, that's not what Congress said the analysis should be. That's not what the BIA said the analysis should be. That's not what this court has said the analysis should be. This court has confirmed. You look at everything. And there just simply is not that work done by the BIA here. And so for that reason, it should be remanded on the lack of a hearing, the particularly serious crime determination, that is, second, the failure to review all the evidence, and the co-commitment failure to articulate a reasoned decision, and then finally, the dangerousness assessment. Now, I know we talked about that briefly, but I just want to go back to that point quickly and talk and answer your question better about why T and v. Holder doesn't control here. And that's because in 2009, when T and v. Holder was decided, the court looked to matter of NAM and said, this is how the BIA says they do it. We defer to the BIA. Five years later, the BIA puts out GGS, and that's when they say dangerousness is the essential key. It's the pivotal factor. It has to be assessed. And it matters in this case because if there was ever a situation where someone's crime doesn't implicate that they're necessarily going to be a danger to community, it's this one. Now, Your Honors, I'd like to reserve three minutes for rebuttal, but before I get there, as my time runs short, I'd like to briefly touch on the Convention Against Torture Peace because it's- Could you just very briefly update us on the status of SHEFA's T visa and U visa applications? Sure, Your Honor. SHEFA's T visa remains pending before USCIS. Her U visa was denied in the first instance, and that is currently under appeal. So those two issues are still alive. I know the government has pointed out that SHEFA's U visa was denied and therefore argues that the issue is moot. We disagree with that because the appeal is ongoing. But if I may briefly touch on this cat piece, Your Honors, because I think it's simple and it's extremely important, the BIA applied the wrong standard in reviewing the case, reviewing the assessment of SHEFA's application under the convention, and that was made clear by the Attorney General no more than two weeks ago. So the Attorney General made clear that when an immigration judge makes factual findings supporting the Convention Against Torture decision, the BIA comes in and assesses those facts for clear error but applies the law to those facts de novo. And that didn't happen here. It is clear from the BIA's order where they said, we conclude that the immigration judge's predictive fact finding that respondent does not face a clear probability of torture is not clearly erroneous. They applied a clear error standard of review. And I'd like to point out briefly the BIA language that the Attorney General just recently overturned in matter of RAF, which we point out in our Rule 28J letter. In that BIA opinion, the BIA said, we discern no clear error in the immigration judge's determination that respondent established that it is more likely than not he will be tortured. It's strikingly similar language to what the BIA said here. And the Attorney General made clear, that's not right. That's not a de novo review. And they kicked it back for further analysis by the BIA. This court should do the same here, because it's clear that the BIA did not assess this issue de novo, but they applied clear error review. Now, Your Honor, I'd like to reserve the rest of my time for rebuttal, if I may, unless there's any other questions I can answer at this point. Seeing none. When you're ready, Ms. Doggart. Thank you. Good morning, Your Honors. Jessica Doggart for the government. As we've recognized here, there are a lot of issues in this case. But the government stands by the fact that Ms. Schieffa is removable and precluded from many forms of relief, because her conviction of first degree manslaughter is a crime of violence, aggravated felony. This court must also dismiss the challenges to the particularly serious crime determination and denial of cat protection under the criminal alien bar. Most of these arguments are not only unexhausted, but they are factual and not actually legal. Finally, the court should deny the second petition for review, because the board did not err in denying the motion to reopen to seek an administrative abeyance. I'd like to first discuss the issue you just finished on with Petitioner's Counsel with respect to the cat claim, because I think that that's a very simple issue as well to address. And if you look directly at the board's decision, I think that this case is very distinguishable from the issue in RAF, and that it was proper under RAF. If you look at the paragraph, it's on page four of the board's decision, which is under two different administrative records, but it's on page six of the administrative record in that first petition for review. It's the second to last full paragraph that we're talking about. And the first, it's two sentences. The first sentence says, upon our review, we conclude that the immigration judge's predictive fact finding that the respondent does not face a clear probability of torture in Ethiopia is not clearly erroneous, based on the totality of the evidence. The board then cites the regulation about reviewing fact finding for clear error, and a decision from the board about reviewing predictive fact finding for clear error. It's clear, based on that, that that sentence is reviewing the immigration judge's fact finding for clear error, and not de novo. The next sentence, we also agree, also meaning a separate determination, with the immigration judge's conclusion that the respondent's testimonial, documentary, and background evidence do not establish that it is more likely than not that she would suffer torture by or with the acquiescence of a government official. In this sentence, the board then cites two of its own decisions, or I'm sorry, excuse me, one of its decisions, the Attorney General's decision, and then an Eighth Circuit decision, both talking about the standard for cap protection. And that sentence clearly references the legal standards for cap relief, and is making a conclusion, based on the totality of the evidence, Ms. Sheffa did not meet the standard. That under matter of RAF, as well as all of this court's case law, is an appropriate and correct determination. That's all this court can review. It cannot get to the factual determinations behind that. It can only consider whether that was an appropriately legal determination for the board to make, and it was. I'd also like to next discuss the particularly serious crime determination. There were three arguments presented regarding that agency finding. The first one is whether or not the agency erred in somehow not holding an additional hearing on the issue. Well, first, this was unexhausted. It was never raised to the board. She never asked the board to remand the issue for an additional hearing to present additional evidence. Up until she got to this court, the claim was always that the criminal court's findings of facts should have been sufficient, and that's all that needed to be presented. Legal arguments were presented in the motion for reconsideration. There's a discussion on the record saying that Ms. Sheffa's attorney would concede on the notion that it was an effort in self-defense, and that that simply wasn't reasonable at the time, and we would rest on the conclusions of the criminal court. That's on the June 8, 2018 hearing. The immigration judge then said, and I'm talking about page 495 of the record, the immigration judge then said that the judge would close the case for decision, but allow if the parties wanted to provide any further briefs on the issue of the motion and what to do regarding withholding and whether or not to pre-termit the claim as a per se particularly serious crime. The judge continued, if I were to find that there could be additional testimony on the issue, then I would just reset the case to another hearing, and Ms. Sheffa's attorney said no objection. It's clear that she did not preserve the ability to seek an additional hearing, and this court should find it unexhausted. Counsel, in the event that it was properly exhausted, could you address Tien versus Holder? And in particular, I'm wondering if that case and similar cases were decided in a context similar to this where you would have either self-defense or other mitigating circumstances, and so perhaps it's distinguishable. This case is not distinguishable simply because of the facts of the case. The reality is that the evidence was put before the agency, the agency considered it, it weighed the factual findings. There's no argument at any point that any of the factual findings were incorrect. All of the arguments are about the weight that was given to particular aspects of that determination. The fact that the board considered the significant harm suffered by Ms. Sheffa during her relationship is sufficient to recognize that the board considered the significant harm that was suffered by her. It did not need to say 45 words. Those words sufficiently determined that the board considered that fact and weighed it differently than Ms. Sheffa's attorney wished that they had. I think the arguments advance that without some recognition of the exact particulars that we don't know that they were fully considered and that the weight, that any weight was given to them. And there are some particularly horrendous allegations here that the criminal court found to be proven, right, and that's what their argument is, and I guess, why are they wrong? To the extent that their argument is there, the argument was presented and the agency weighed them one direction. There's no evidence that the immigration judge did not understand that those facts were presented. The immigration judge clearly recognized all of the harm that was suffered and discussed in, throughout all of the testimony and transcripts, everything that happened, particularly with respect to the cat claim itself and evaluating that claim. All of the claims about what happened really were molded into her testimony and whether or not she met her burden for cat protection. And so, it's clear on this record that no evidence was disregarded. All of the facts were considered, and the board is not required to write an exegesis on every single contention. It clearly did consider the facts that she was weighing more heavily, and it weighed the facts differently. And although the facts here are significant and numerous, that doesn't change the reality that the facts were considered and weighed. And that's all that this court considered under Teon, under Lovan, this court's 2009 decision. And there's also, I think, a distinguishing factor in that a lot of the cases that petitioner cites in this regard, the agency was faulted for not actually acknowledging specific evidence. So, for example, the Nganwe case. In that case, it was whether or not the government could protect an individual. And the immigration judge did not even recognize or acknowledge specific evidence that was presented. Here, the immigration judge did acknowledge the evidence that was presented. The criminal court's findings of fact were central to everything that happened in immigration court. And it was considered, acknowledged, and a decision was reached. So that molds both the denial of a hearing as well as the provide the fully reasoned decision argument. The third argument has to do with whether or not the agency applied the correct standard. And that deals with the dangerousness of the community. And I think the disagreement here is really one of semantics, almost. Because under NAM and under the board's case law, it was required to consider the specific circumstances of the crime and whether or not that crime constituted a particularly serious one. And that happened here. The immigration judge considered the circumstances of the crime. And while there was evidence that mitigated the crime down to heat of a passion offense, it wasn't a self-defense under Minnesota law. And that was also considered. The agency recognized that the victim was stabbed 30 times, resulting in the death. And that exceeded the force required for self-defense. And that's at page 187 of the record. The particular circumstances and the underlying facts were recognized by the immigration judge. And the immigration judge, even considering all of that, still resolved that the crime against a person resulting in death after 30 stab wounds rendered it particularly serious. That's all that's required under the board's analysis. It weighed the facts. It considered the implications and reached a conclusion. And any disagreement with that is factual and not legal. I would only like to briefly address the second petition for review with respect to the pending UNT visa petitions. I believe that the case is fully briefed on that issue. But I would like to highlight the fact that for administrative closure, there has to be a regulation that allows administrative closure. And the regulations in this case only apply to individuals who are actually in proceedings. I recognize Ms. Schieffel wants to reopen her proceedings so that she would then be in proceedings again. But that defies the purpose of those regulations. It defies the purpose of finality. And it defies the interests both before this court and the immigration courts. Any other disagreements with that argument would be factual and would be precluded under the criminal alien bar. And then with respect to the continuance standard, I also would rest on our briefing but just point out that the reality is that Ms. Schieffel would have to demonstrate that there was a likelihood of success on the relief that she was seeking. That's not the UR the T visa. That's the continuance itself. And the standards for that are good cause shown. And she has not met that standard by demonstrating that she was eligible for the necessary waiver. Is there no further questions? No. Thank you. Thank you. Mr. Crowder, you have, I think, a minute or so. Thank you again, Your Honors. I'd like to quickly touch on a few points. The first is government counsel said that this issue, the PSC issue, wasn't raised to the board. That couldn't be more incorrect. In fact, one of Schieffel's four issues for resolution raised to the board was this very specific issue. It's one of her four issues presented. She writes, since the immigration judge never held a hearing regarding respondents' application, her application should be remanded for further proceedings to determine whether her conviction constitutes a particularly serious crime. She later argues that the case, again, should be remanded. This is a case where she asked the BIA to remand so that this issue could be considered because it hadn't been, because she didn't get a hearing. That's not like the waiver cases or the unexhaustion cases the government has raised, where clearly the issue wasn't raised. And again, while Schieffel's counsel did indicate the record may be complete, he also made clear what he would be arguing with respect to a particularly serious crime. On page 313 of the record, he, quote, says, I would argue that this was not a particularly serious crime if given the chance. Your Honors, I see that my time is running short. If I have your leave, I'd like to finish. You may. I'll give you one more minute because we asked you a question at the end of it. You said you were done. Sure. So, Your Honors, it's important that in matter of NAM, the BIA has said, it has been our practice to allow both parties to explain and introduce evidence. You know, these are busy immigration judges. We can't just assume that they're going to page through a thousand-page administrative records and identify the facts that are most relevant to their determinations. Argument matters. Hearings matter. And that's why this court in Thun v. Gonzalez said that it's not only a statutory right, but a violation of due process if you don't get that hearing. Schieffel didn't get that hearing, and she's entitled to it. And she made that issue known to the BIA, and the BIA just ignored it. That's not something that this court should condone. Because, again, this is an agency that's tasked with making these assessments so that this court can look at their decisions and say, well, yeah, they followed their procedures and they followed the law, or they didn't. And here they clearly didn't. There's no hearing, there's no articulated reason decision, and there simply was no dangerousness assessment as the statute requires. And then briefly, on the visa issues, Your Honor, there is nothing that says you can't file a motion to reopen and seek underlying relief because the underlying relief wasn't available until your case was reopened. There is no standard that says that. The BIA can reopen its case at any time, and it could have done so here. It just chose not to based on a distortion of the law. Now, if there's any other questions, I'm happy to answer them. Otherwise, I'll thank you for my time. Thank you.